01

02

03

04

05

06                        UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF WASHINGTON
07                                AT SEATTLE

08 CAROLYN MURPHY,                        )
                                          )   CASE NO. C13-0015-RAJ-MAT
09        Plaintiff,                      )
                                          )
10   v.                                   )   REPORT AND RECOMMENDATION
                                          )   RE: SOCIAL SECURITY DISABILITY
11 CAROLYN W. COLVIN, Acting              )   APPEAL
   Commissioner of Social Security,       )
12                                        )
          Defendant.                      )
13 _____ )

14         Plaintiff Carolyn Murphy proceeds through counsel in her appeal of a final decision of

15 the Commissioner of the Social Security Administration (Commissioner).   The Commissioner

16 denied plaintiff's application for Supplemental Security Income (SSI) after a hearing before an

17 Administrative Law Judge (ALJ).   Having considered the ALJ's decision, the administrative

18 record (AR), and all memoranda of record, the Court recommends this matter be AFFIRMED.

19                      **FACTS AND PROCEDURAL HISTORY**

20         Plaintiff was born on XXXX, 1964.[1]   She completed the tenth grade of high school and

21

22         1 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of
   Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case

01 obtained her GED.  Plaintiff previously worked as a receptionist, auto parts counter clerk,

02 warehouse worker, cashier, daycare worker, fast food worker, box bender, and electrical

03 inspector.  (AR 80-81.)

04      Plaintiff filed an application for SSI in March 2010, alleging disability beginning

05 November 15, 2008. [2]   (AR 194-97.)   Her application was denied initially and on

06 reconsideration, and she timely requested a hearing.

07      ALJ Stephanie Martz held a hearing on October 25, 2011, taking testimony from

08 plaintiff, a vocational expert (VE), and plaintiff's therapist, Diane Spangler.  (AR 32-89.)   On

09 November 7, 2011, the ALJ rendered a decision finding plaintiff not disabled.  (AR 11-24.)

10      Plaintiff timely appealed.  The Appeals Council denied plaintiff's request for review

11 on November 5, 2012 (AR 1-3), making the ALJ's decision the final decision of the

12 Commissioner.   Plaintiff appealed this final decision of the Commissioner to this Court.

13 **JURISDICTION**

14      The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

15 **DISCUSSION**

16      The Commissioner follows a five-step sequential evaluation process for determining

17 whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).   At step one, it

18 must be determined whether the claimant is gainfully employed.   The ALJ found that plaintiff

19 had not engaged in substantial gainful activity since March 1, 2010, the application date.  *See*

20

21 Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

22    2 It appears that plaintiff previously applied and was denied disability benefits in a final
decision dated June 18, 2009.  (*See* AR 11.)

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

01    Social Security Ruling (SSR) 83-20 (SSI payments are prorated for the first month for which

02    eligibility is established after application and after a period of ineligibility).

03         At step two, it must be determined whether a claimant suffers from a severe impairment.

04    The ALJ found severe: degenerative disc disease with central stenosis and foraminal stenosis

05    with radiculopathy; meniscal tear left knee; status post fracture left ring finger; obesity;

06    hypothyroidism; alcohol, methamphetamine, cocaine, and opiate dependence in sustained full

07    remission; and dysthmic disorder.   Step three asks whether a claimant's impairments meet or

08    equal a listed impairment.   The ALJ found plaintiff's impairments did not meet or equal the

09    criteria of a listed impairment.

10         If a claimant's impairments do not meet or equal a listing, the Commissioner must

11    assess residual functional capacity (RFC) and determine at step four whether the claimant has

12    demonstrated an inability to perform past relevant work.   The ALJ found plaintiff had the RFC

13    to perform sedentary work, except that she can lift and carry ten pounds occasionally and ten

14    pounds frequently; sit about six hours; and stand or walk at least two hours in an eight-hour day

15    with regular breaks.   She further found plaintiff: can push/pull within the above-described

16    exertional limits; occasionally climb ladders, ropes, or scaffolds, and frequently climb ramps

17    and stairs; frequently balance, kneel, crouch, and crawl; occasionally finger with her left hand;

18    should avoid concentrated exposure to vibration and hazards; is able to understand, remember,

19    and carry out very short and simple instructions and make simple decisions; can have

20    occasional and brief superficial contact with coworkers, supervisors, and the public; should

21    have a routine and predictable workplace; and would need to change positions between sitting

22    and standing at will.   With that RFC, the ALJ found plaintiff unable to perform her past work.

01      If a claimant demonstrates an inability to perform past relevant work or has no past

02  relevant work, the burden shifts to the Commissioner to demonstrate at step five that the

03  claimant retains the capacity to make an adjustment to work that exists in significant levels in

04  the national economy.   The ALJ concluded plaintiff could perform jobs existing in significant

05  numbers in the national economy, such as work as a surveillance system monitor and addresser.

06  The ALJ, therefore, concluded plaintiff was not disabled since the March 1, 2010 application

07  date.

08      This Court's review of the final decision is limited to whether the decision is in

09  accordance with the law and the findings supported by substantial evidence in the record as a

10  whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).   Substantial evidence means

11  more than a scintilla, but less than a preponderance; it means such relevant evidence as a

12  reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881

13  F.2d 747, 750 (9th Cir. 1989).   If there is more than one rational interpretation, one of which

14  supports the final decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278

15  F.3d 947, 954 (9th Cir. 2002).

16      Plaintiff argues the ALJ erred in rejecting consistent medical opinion evidence, in

17  assessing her credibility, lay witness testimony, and the RFC, and in reaching the conclusion at

18  step five.   She requests remand for an award of benefits or, in the alternative, for further

19  administrative proceedings.   The Commissioner argues that the ALJ's decision is supported by

20  substantial evidence and should be affirmed.

21                              Medical Opinion Evidence

22      Social Security regulations distinguish between "acceptable medical sources" and

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

01 "other sources." Acceptable medical sources include, for example, licensed physicians and

02 psychologists, while other non-specified medical providers are considered "other sources."   20

03 C.F.R. §§ 404.1513(a) and (d), 416.913(a) and (d), and SSR 06-03p.

04      In general, more weight should be given to the opinion of a treating physician than to a

05 non-treating physician, and more weight to the opinion of an examining physician than to a

06 non-examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where not

07 contradicted by another physician, a treating or examining physician's opinion may be rejected

08 only for "'clear and convincing'" reasons.  *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391,

09 1396 (9th Cir. 1991)).  Where contradicted, a treating or examining physician's opinion may

10 not be rejected without "'specific and legitimate reasons' supported by substantial evidence in

11 the record for so doing."  *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.

12 1983)).

13      Less weight may be assigned to the opinions of "other sources."  *Gomez v. Chater*, 74

14 F.3d 967, 970 (9th Cir. 1996).  However, the ALJ's decision should reflect consideration of

15 such opinions, SSR 06-3p, and the ALJ may discount the evidence by providing reasons

16 germane to each source.  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (cited sources

17 omitted).

18      Plaintiff argues the ALJ erred in the assessment of the medical opinions of treating

19 physician Dr. Harold Moore, mental health counselor Diane Spengler, examining physicians

20 Drs. Mark Koenen and James Czysz, and reviewing physician Dr. Diane Fligstein.  Given the

21 existence of contradictory opinion evidence, the ALJ was required to provide specific and

22 legitimate reasons for rejecting medical opinions.

01   A.   Dr. Harold Moore

02         Dr. Moore has served as plaintiff's treating physician for many years.   As described by

03   the ALJ, in August 2011, Dr. Moore opined that plaintiff would have "slight to moderate

04   impairments in her cognitive and social work factors, indicating [she] would have some

05   moderate limitations but was still able to function[,]" and, due to her degenerative disc disease

06   and meniscal tear, could lift up to ten pounds occasionally, stand and sit for one hour, walk for

07   one hour total in an eight-hour day, and "could 'sit for short periods but would need to stand and

08   walk frequently, but not far[.]'"   (AR 19-20 (discussing AR 871-79).)   This was "generally

09   consistent" with an October 2011 assessment by Dr. Moore.   (AR 20 (discussing AR 900-02).)

10   Previously, in December 2009, Dr. Moore opined plaintiff's chronic low back pain and left

11   finger fracture would cause "[very] significant interference" with plaintiff's ability to stand,

12   walk, lift, carry, and handle, but assessed no restrictions on sitting, and opined both that

13   plaintiff could perform sedentary work and was permanently disabled.   (*Id*. (discussing AR

14   822-25).)

15         The ALJ gave Dr. Moore's opinions little weight:

16         His opinions regarding the claimant's mental abilities and her ability to do
         sedentary work are given significant weight.   However, his opinion regarding
17         the claimant's limitations for sitting to one hour in an eight-hour day, postural
         limitations, and limitations on reaching with her right hand, are given little
18         weight.   Dr. Moore's treatment notes reflect little objective findings that are
         consistent with these opinions.   Although Dr. Moore noted the claimant
19         reported some "tingling" in her right hand in March 2011, he did not indicate
         any treatment was necessary and later examinations do not mention this issue.
20         He rarely even notes any complaints of back pain or other objective findings of
         problems relating to the claimant's allegedly disabling back impairment.   For
21         example, in June 2011, Dr. Moore noted the claimant's chronic back pain, but
         also noted it was "controlled to some extent" with her use of methadone.   Dr.
22         Moore's opinion that the claimant could not sit for more than an hour per day in

01  2011 also conflicts with his opinion from 2009 in which he did not indicate the
    claimant would have any limitations on sitting.   Dr. Moore's opinion on sitting
02  is also inconsistent with the claimant[']s reported activities, which include
    reading, watching movies, and using a computer.   The claimant states that
03  when she stands for too long she needs to "sit," and does not indicate she must
    spend significant periods of time laying down.   Thus, Dr. Moore's opinions are
04  also inconsistent with the claimant's activities, internally inconsistent, and not
    supported by objective findings.

05

06  (AR 20.)

07      The ALJ also gave little weight to a June 2011 letter from Dr. Moore, wherein he opined

08  plaintiff could not "work due to her medical and mental health disability."  (AR 20, 810.)

09  (*See also* AR 905 (October 2011 treatment note stating:   "She is unable to work due to her knee

10  injury and chronic back problem."))   In that letter, Dr. Moore pointed specifically to plaintiff's

11  "degenerative disc disease and anteriolisthesis L3 on L4[,]" as well as her obesity,

12  hypothyroidism, depression, and meniscal tear.   (AR 810.)   The ALJ found the opinion

13  "conclusory[,]" stating Dr. Moore "fails to explain the basis for it[,]" and adding it was "not

14  clear" whether he was familiar with the SSA definition of disability.  (AR 20 (also stating:

15  "Further, as noted above, his other opinions of limitations are similarly unsupported and

16  inconsistent with the record as a whole.   As such, his conclusory opinion that the claimant is

17  'disabled' merits no weight."))

18      In arguing error, plaintiff first points to Dr. Moore's consistent prescription of

19  medications for her depression and anxiety, his knowledge of her counseling and methadone

20  maintenance, and his reports that her depression was in "'fair' to 'poor' control."  (Dkt. 15 at 8

21  (cited sources omitted).)   However, the ALJ gave Dr. Moore's opinions as to plaintiff's mental

22  abilities significant weight.  (AR 20.)   An ALJ need not provide reasons for rejecting a

01  physician's opinions where the ALJ incorporated such opinions into the RFC.  *Turner v.*

02  *Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir 2010) (ALJ incorporated opinions by

03  assessing RFC limitations "entirely consistent" with limitations assessed by physician).

04  Plaintiff fails to demonstrate that the mild to moderate limitations assessed by Dr. Moore were

05  not consistent with the assessed RFC.

06      Plaintiff notes that the December 2009 evaluation from Dr. Moore also includes the

07  opinion that she is "permanently disabled[.]"  (AR 825.)  However, the ALJ acknowledged

08  that observation, as well as his simultaneous opinion that plaintiff could perform sedentary

09  work.  (AR 824.)  The ALJ's reliance on the opinion as to sedentary work can be deemed

10  rational.  *See Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where

11  the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion

12  that must be upheld.") (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).

13      Plaintiff describes the purported absence of consistent objective findings as "simply not

14  true[,]" pointing to Dr. Moore's repeated references to MRI findings.  (Dkt. 15 at 8 (citing AR

15  836, 840, 849, 856).)  Those findings included a January 23, 2008 MRI of plaintiff's back and

16  May 25, 2011 MRI of her knee.  (AR 463 (reflecting mild and moderate degenerative disc

17  changes and anterolisthesis of L3 on L4) and AR 860-61 (reflecting radial tear of meniscus,

18  ligament sprain, ruptured cyst, and "[v]ery small" cartilage defect).)

19      Plaintiff appears to assert error as related to her knee condition.  However, consistent

20  with Dr. Moore's assessment, the ALJ found plaintiff capable of standing and/or walking for a

21  total of two hours in an eight-hour day with regular breaks.  (AR 17; *accord* AR 875 (assessing

22  plaintiff as capable of standing, at one time without interruption and total in an eight-hour work

01   day, for one hour, finding same with respect to walking, and declining to find plaintiff capable

02   of lesser amounts of time for each function).)

03        Nor does plaintiff demonstrate error in relation to her back or hand conditions. "The

04   ALJ need not accept the opinion of any physician, including a treating physician, if that opinion

05   is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at

06   957. The ALJ here appropriately pointed to a lack of objective support, including minimal

07   observations as to plaintiff's hand, and rare observations of back pain or other objective

08   findings, as well as the observation that plaintiff's back pain was controlled to some extent with

09   medication. (AR 20.) It should further be noted that, in relation to plaintiff's back, Dr.

10   Moore's December 2009 evaluation included consideration of the January 2008 MRI findings,

11   and he presented no new objective findings to support the more restrictive limitations assessed

12   subsequently.

13        The ALJ also appropriately considered evidence of inconsistencies relating to the sitting

14   limitation assessed in 2011, including the absence of any prior assessed limitation and evidence

15   of plaintiff's reported activities. *See Morgan*, 169 F.3d at 603 (ALJ appropriately considers

16   internal inconsistencies within and between physicians' reports) and *Tommasetti v. Astrue*, 533

17   F.3d 1035, 1041 (9th Cir. 2008) (inconsistency with the record properly considered by ALJ in

18   rejection of physician's opinions); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001)

19   (affirming rejection of a treating physician's opinion that was inconsistent with the claimant's

20   level of activity). In addition, while plaintiff did testify she needed to get up after thirty

21   minutes of sitting (AR 47), the ALJ accounted for that testimony by including in the RFC the

22   need to change positions between sitting and standing at will (AR 17).

01       Plaintiff takes issue with the ALJ's description of Dr. Moore's opinion as conclusory,

02   pointing to his long history of treatment and longitudinal sense of her impairments.   She

03   maintains the ALJ impermissibly required Dr. Moore to certify his understanding of the Social

04   Security Act definition of disability.   These arguments fail.   "Although a treating physician's

05   opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ

06   with respect to the existence of an impairment or the ultimate determination of disability."

07   *McLeod v. Astrue*, 634 F.3d 516, 520 (9th Cir. 2011) (quoting *Tonapetyan v. Halter*, 242 F.3d

08   1144, 1148 (9th Cir. 2001) and citing § 404.1527(e)(1) ("A statement by a medical source that

09   you are 'disabled' or 'unable to work' does not mean that we will determine that you are

10   disabled."))   While plaintiff takes a contrary view as to the value of Dr. Moore's letter, she

11   fails to demonstrate that the ALJ's interpretation of the evidence was not rational.   *See*

12   *Morgan*, 169 F.3d at 599.

13       Finally, plaintiff notes the absence of any contravening evidence from a treating or

14   evaluating provider with respect to her physical condition.   However, while true, the record did

15   contain contradictory, January 2011 opinion evidence from non-examining State agency

16   physician Dr. Gordon Hale.   (AR 776 (affirming opinion at AR 100-07).)   The ALJ found Dr.

17   Hale's opinion generally consistent with the evidence of record and gave it some weight, but

18   found it reasonable to limit plaintiff to sedentary work in light of her more recent knee injury.

19   (AR 19.)

20       "The opinion of a nonexamining physician cannot by itself constitute substantial

21   evidence that justifies the rejection of the opinion of either an examining physician or a treating

22   physician."   *Lester*, 81 F.3d at 831 (cited sources omitted).   However, "the report of a

nonexamining, nontreating physician need not be discounted when it 'is not contradicted by *all other evidence* in the record.'" *Andrews*, 53 F.3d at 1041 (quoting *Magallanes*, 881 F.2d at 752 (emphasis in original)).   *Accord Tonapetyan*, 242 F.3d at 1148-49   (contrary opinion of a non-examining medical expert "may constitute substantial evidence when it is consistent with other independent evidence in the record.")   Moreover, "[t]he ALJ is responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008).   When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ.   *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In this case, plaintiff fails to demonstrate that the ALJ's resolution of conflicts in the evidence and reliance on Dr. Hale's contradictory opinions was not reasonable.   Instead, as reflected above, the ALJ pointed to specific and legitimate reasons for rejecting portions of Dr. Moore's opinions, and properly relied on both evidence from Dr. Hale and other consistent evidence in the record.   Therefore, the ALJ's reasoning in relation to Dr. Moore withstands scrutiny.

B.     Diane Spengler

The ALJ gave little weight to May 2010 and May 2011 opinions and the testimony of Ms. Spengler, plaintiff's treating mental health provider.   (AR 21-22.)   As described by the ALJ, Ms. Spengler opined plaintiff's "anxiety is likely the greatest inhibitor of [her] functioning," that she "has poor communication skills, and poor memory and judgment[,]" that her mental health resulted from childhood trauma, prior to substance abuse issues, and that she "would not be employable anytime in the near future because of her pain and mental health

01    issues[.]"   (AR 21 (discussing AR 802-09 and AR 64-75).)

02        The ALJ found Ms. Spengler's opinions inconsistent with the evidence in the record as

03    a whole, contrasting, as an example, her belief that plaintiff has PTSD, with examining

04    physician Dr. Mark Koenen's opinion that there was insufficient evidence to establish that

05    diagnosis.   (AR 21-22.)   The ALJ also found Ms. Spengler's opinions inconsistent with

06    plaintiff's activities of daily living, stating her ability "to run errands, make doctor's

07    appointments, read crime novels, and do household chores support the claimant's abilities to do

08    simple, repetitive tasks."   (AR 22.)   She further found the opinions inconsistent with Dr.

09    Koenen's objective findings, and concluded that Ms. Spengler's "own notes do not support her

10    conclusions as they do not reflect significant complaints of depression or anxiety."   (*Id.*)

11        Plaintiff argues the ALJ's disregard of Ms. Spengler's testimony "is ill-founded because

12    it is indeed consistent with the reports of other psychiatric providers, and the fact that [she] is

13    able to do basic self-care and go to appointments is immaterial."   (Dkt. 15 at 10 (citing *Smolen*

14    *v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996) ("The Social Security Act does not require

15    that claimants be utterly incapacitated to be eligible for benefits, and many home activities may

16    not be easily transferable to a work environment where it might be impossible to rest

17    periodically or take medication.")) Plaintiff notes Ms. Spengler's testimony that she

18    frequently misses appointments because she is so depressed she cannot get out of bed.   (AR 66,

19    69.)   Again, however, plaintiff fails to demonstrate error.

20        The ALJ provided several germane reasons for according Ms. Spengler's opinions little

21    weight, including inconsistencies both internally and with the objective findings and other

22    evidence from Dr. Koenen.   *See Morgan*, 169 F.3d at 603.   While plaintiff finds the report of

01  Dr. Koenen to reveal more consistency that not, the ALJ's reading of inconsistency between the

02  opinions is equally rational.   For example, Dr. Koenen found plaintiff "did not endorse any

03  history or symptoms consistent with an actual PTSD diagnosis[]" (AR 710), and found her only

04  mildly limited in her ability to accept instructions from supervisors, able to perform simple and

05  repetitive tasks, and mildly impaired in her ability to perform more detailed and complex tasks.

06  (AR 714.)   (*See also* AR 712 (Dr. Koenen's Mental Status Examination results).)   Also, as

07  discussed further below, while assessing various moderate limitations, Dr. Koenen found they

08  could be expected to improve with psychotherapy and exposure to the workplace.   (*Id.*)

09          In addition, while pointing to the consistency of Ms. Spengler's opinions with the

10  opinions of Drs. Moore and Czysz, plaintiff essentially, and improperly, seeks to re-weigh the

11  evidence.   Because she fails to demonstrate that the ALJ failed to reasonably resolve the

12  conflicting opinion evidence, she fails to demonstrate error.   *See Morgan*, 169 F.3d at 599.

13          Finally, the ALJ also reasonably identified inconsistencies between Ms. Spengler's

14  opinions and evidence of plaintiff's activities.   Plaintiff's contention that such consideration

15  was "immaterial" should be rejected.   *See Tommasetti*, 533 F.3d at 1041; *Rollins*, 261 F.3d at

16  856.   It should further be noted that the ALJ specifically, and appropriately, associated the

17  activities with her conclusion that plaintiff could perform simple, repetitive tasks.   (AR 22.)

18  For this reason, and for the reasons stated above, the ALJ's assessment of Ms. Spengler's

19  opinions was sufficient.

20  C.      Dr. Mark Koenen

21          The ALJ found examining psychologist Dr. Koenen's July 2010 opinions supported by

22  his evaluation and gave them significant weight.   (AR 20-21.)   Plaintiff challenges the ALJ's

01  consideration of Dr. Koenen's opinions that she had moderate impairments in her abilities to

02  complete a normal workday or workweek, to interact with co-workers, supervisors, and the

03  public, and tolerate the stress of competitive work.  (AR 714.)   The ALJ acknowledged these

04  opinions, but noted Dr. Koenen's clarification that "each of these impairments would be

05  expected to improve with treatment and exposure to the workplace."  (AR 21, 714.)

06       Plaintiff avers an absence of any evidence in the record that her psychiatric conditions

07  improved with treatment, noting Ms. Spengler's subsequent, October 2011 opinion that she was

08  not able to work because of her continuing psychiatric impairments.   However, plaintiff fails

09  to account for the fact that Dr. Koenen opined as to his expectation of improvement with both

10  psychotherapy *and* exposure to the workplace.  (AR 713.)   Nor does plaintiff acknowledge

11  the specific type of psychotherapy recommended by Dr. Koenen; namely, psychotherapy

12  directed towards engaging in "anxiety provoking situations[,]" such as "dealing with aversive

13  situations and with authority figures[,]" "so that she can learn to better tolerate these situations

14  and improve."  (AR 713-14.)   He opined that "[a]ppropriate psychotherapy directed at this

15  end would likely lead to significant improvement within the next year[,]" but that "continuing

16  to enable [plaintiff] to avoid anxiety provoking situations (which seems to be the case at

17  present) will all but assure that her functional ability will never improve."  (AR 714.)

18  Plaintiff does not point to any evidence that she received the type of psychotherapy

19  recommended by Dr. Koenen.

20       Moreover, plaintiff fails to support a necessary conflict between the limitations assessed

21  by Dr. Koenen and the RFC.  In particular, the ALJ can be said to have accounted for the

22  limitations as related to interactions and stress by limiting plaintiff to occasional and brief

01  superficial contact with coworkers, supervisors, and the public, and to a routine and predictable

02  workplace.   (*See also* AR 713 (Dr. Koenen also stated that plaintiff's depressive symptoms did

03  "not appear to be particularly severe at [that] time[,]" and that her panic symptoms "appear[ed]

04  to be largely under control."))   These portions of Dr. Koenen's opinions required no further

05  consideration by the ALJ.   *Turner*, 613 F.3d at 1223.   Plaintiff, as such, fails to demonstrate

06  error.

07  D.     Dr. James Czysz

08          The ALJ gave little weight to October 2011 opinions of examining psychologist Dr.

09  Czysz assessing marked limitations in plaintiff's ability to perform routine tasks without undue

10  supervision, to perform effectively in a work setting with public contact, and to maintain

11  appropriate behavior in a work setting.   (AR 21 and AR 896-97.)[3]   She found:

12          His opinions are inconsistent with the evidence in the record as a whole.   For
        example, while he discussed the claimant's panic attacks, there is little
13          indication in the treatment records that the claimant is experiencing panic
        attacks.   His opinions ignores the fact that the claimant lives on her own and is
14          able to routinely attend doctors' appointments and obtain her daily methadone
        dose.   His opinions are also inconsistent with the claimant's ability to have
15          normal appearance, interaction, and affect during her medical appointments.

16  (AR 21.)

17          Plaintiff denies inconsistency with the record, but points to the properly discounted

18  opinions of Dr. Moore and Ms. Spengler as evidence of consistency.   She does not

19  demonstrate that the ALJ's reliance on the contradictory opinion evidence from Dr. Koenen and

20  reviewing psychologists Drs. Fligstein and Hacker was not rational.

21  _____

22          3 Plaintiff notes that Dr. Czysz reached similar conclusions in an August 12, 2008 evaluation,
but such opinions would have been relevant to and addressed in the final June 2009 decision denying
benefits.   (*See* AR 11.)

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -15

01          Plaintiff describes as inaccurate the ALJ's observation as to evidence of her panic

02   attacks.   However, she relies almost entirely on her own report, either on forms or to medical

03   providers, of her history of panic attacks.   (*See* AR 63, 211, 219, 239, 246, 252, 267, 709, 745.)

04   Other documents pointed to are either irrelevant to the current time period (AR 454, 512 (same

05   document, in different form) or of questionable relevance (AR 352; *see also* AR 745).   Instead,

06   as suggested by the Commissioner, the fact that plaintiff reported panic attacks in only one out

07   of some sixteen therapy sessions (*see* AR 881-92) provides support for the ALJ's rejection of

08   the opinions of Dr. Czysz.

09          Finally, plaintiff maintains the ALJ impermissibly substituted her judgment for that of

10   Dr. Czysz in finding his opinions inconsistent with the ability to have a normal appearance,

11   interaction, and affect during medical appointments.   However, as stated above, it is entirely

12   appropriate for the ALJ to consider evidence of inconsistencies in the record, *Tommasetti*, 533

13   F.3d at 1041, and, further, the ALJ's responsibility to resolve conflicts in the medical opinion

14   evidence, *Carmickle*, 533 F.3d at 1164.   The ALJ, therefore, also appropriately considered

15   inconsistency between Dr. Czysz's opinions and the fact that plaintiff lives on her own and is

16   able to routinely attend medical appointments and obtain her daily methadone dose.   Plaintiff,

17   in sum, fails to demonstrate any error in the ALJ's consideration of the opinions of Dr. Czysz.

18   E.       Dr. Diane Fligstein

19          In July 2010, reviewing State agency psychologist Dr. Fligstein found plaintiff ability to

20   understand and carry out short, simple instructions and work-like procedures, make simple

21   decisions, maintain a normal workweek, ask simple questions, maintain appropriate grooming,

22   avoid workplace hazards, and use public transportation.   (AR 718.)   Dr. Hacker, in January

01   2011, affirmed that opinion.  (AR 794.)  The ALJ found the opinions consistent with the

02   evidence in the record as a whole and accorded them significant weight.  (AR 21.)

03        Plaintiff maintains the ALJ impermissibly "cherry-picked" Dr. Fligstein's opinions by

04   ignoring various moderate limitations assessed.  (*See* AR 716-18.)   However, as the

05   Commissioner observes, the ALJ properly relied on the narrative portion of the form completed

06   by Dr. Fligstein, rather than the check-box portion of that form.   Program Operations Manual

07   System (POMS) DI 25020.010 at B.1.[3] Also, in describing Dr. Fligstein's opinions as "vague

08   and unhelpful[]" (Dkt. 22 at 7), plaintiff focuses on only one statement in the report from Dr.

09   Fligstein, and fails to fully account for the statement made.  (See AR 718 ("Her adequate

10   cognitive functioning and [activities of daily living] during her [consultative evaluation] also

11   support her ability to engage in simple, routine tasks the majority of the time."))   Nor, for the

12   same reasons discussed previously, does plaintiff demonstrate any error in Dr. Fligstein's

13   comparison of Ms. Spengler's opinion as to plaintiff's inability to work with evidence that

14   plaintiff runs errands, goes to doctor appointments, reads crime novels, and perform household

15   chores.   The ALJ's consideration of this and the other medical opinion evidence should be

16   upheld.

Credibility

18        Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

19   reject a claimant's testimony.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)

20   (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  *See also Vertigan v. Halter*,

---

[3] Although the POMS "does not have the force of law" it "is persuasive authority." *Warre*, 439 F.3d at 1005.

01   260 F.3d 1044, 1049 (9th Cir. 2001).   "General findings are insufficient; rather, the ALJ must

02   identify what testimony is not credible and what evidence undermines the claimant's

03   complaints."   *Lester*, 81 F.3d at 834.   "In weighing a claimant's credibility, the ALJ may

04   consider his reputation for truthfulness, inconsistencies either in his testimony or between his

05   testimony and his conduct, his daily activities, his work record, and testimony from physicians

06   and third parties concerning the nature, severity, and effect of the symptoms of which he

07   complains."   *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

08          The ALJ in this case found plaintiff's impairments could be reasonably expected to

09   cause some of the alleged symptoms, but that her statements concerning the intensity,

10   persistence, and limiting effects of those symptoms were not entirely credible.   As set forth

11   below, the ALJ provided several clear and convincing reasons for this determination.

12          First, the ALJ considered that plaintiff "has had little treatment for, or complaints of,

13   back pain." (AR 18.)   The ALJ pointed specifically to the few complaints of back pain in Dr.

14   Moore's treatment notes, and the fact that plaintiff has done little else than take methadone as

15   treatment, and found her lack of consistent complaints to undermine the alleged severity of her

16   back condition. (*Id.*)   In challenging this reasoning, plaintiff points to the records of Dr.

17   Moore, while conceding that the treatment for her chronic back condition is conservative.

18   However, the ALJ's reasoning was entirely appropriate.   Indeed, "evidence of 'conservative

19   treatment' is sufficient to discount a claimant's testimony regarding severity of an

20   impairment[.]" *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007); *see also Meanel v. Apfel*,

21   172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where petitioner's

22   "claim that she experienced pain approaching the highest level imaginable was inconsistent

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -18

01  with the 'minimal, conservative treatment' that she received").

02       Second, the ALJ considered that "[a]lthough there is insufficient evidence to indicate . .

03  . ongoing substance abuse issues, the evidence in the record suggested [plaintiff] has not been

04  entirely honest about her usage."   (AR 18.)   Plaintiff criticizes this reasoning as impermissible

05  speculation, contending drug use is not an issue in this case, noting the absence of any opinion

06  evidence as to an active substance abuse problem, as well as that the ALJ found her drug and

07  alcohol abuse in full-sustained remission.   These arguments fail.

08       The ALJ noted a January 2011 incident in which plaintiff refused to provide a urine

09  sample for drug testing, and her statement on the following day that "she would sometimes

10  'smoke crack on a dark, cloudy day[.]'"   (AR 18 (citing AR 784).)   The ALJ noted that, in

11  October 2011, plaintiff reported "having a 'cocaine dirty' in January that she did not want

12  anyone to know about, particularly in light of her application for SSI benefits[.]"   (*Id*. (citing

13  AR 940).)   The ALJ also noted other issues associated with plaintiff's urine samples at her

14  methadone clinic, including that, in April and October 2011, she "had low creatinine levels,

15  which can indicate a diluted sample[,]" and that, in July 2011, she refused to leave a sample and

16  did not leave another sample until more than a week later.   (*Id*. (citing AR 909).)   The ALJ

17  found plaintiff's credibility "further undermined by the possibility she is withholding

18  information[,]" pointing to the fact that, also in October 2011, plaintiff referenced the existence

19  of a letter, not included in the record, but "which apparently discussed 'a grey area'" in her life

20  "and cocaine relapses[.]"   (*Id*. (citing AR 940).)

21       An ALJ may consider "ordinary techniques of credibility evaluation, such as the

22  claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and

01   other testimony by the claimant that appears less than candid[.]"   *Smolen*, 80 F.3d at 1284.

02   *See also Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ appropriately considers

03   reputation for truthfulness and inconsistencies in plaintiff's testimony).   Proper considerations

04   include inconsistencies regarding drug and alcohol usage.   *See Verduzco v. Apfel*, 188 F.3d

05   1087, 1090 (9th Cir. 1999).   Further, "[i]n reaching [her] findings, the law judge is entitled to

06   draw inferences logically flowing from the evidence."   *Sample v. Schweiker*, 694 F.2d 639,

07   642 (9th Cir. 1982) (cited sources omitted).   In this case, contrary to plaintiff's contention, the

08   ALJ's reasoning associated with plaintiff's drug use and testing, and generally touching upon

09   questions of her honesty and forthrightness, was entirely appropriate and well supported.

10        The ALJ next reflected that plaintiff "appears to be trying to portray herself as

11   completely disabled."   (AR 18.)   She references statements in the record reflecting plaintiff's

12   intention to never give up in seeking SSI and that "she would 'never work again[.]'"   (AR 18

13   (citing AR 926, 930).)   She also contrasts plaintiff's testimony as to her limited ability to walk,

14   with reports of her daily walking, losing weight and maintaining an exercise regime, her ability

15   to take care of her small apartment, and that exercise and daily walking helped her deal with her

16   knee pain.   (*Id.* (citing AR 925, 939).)

17        Again, plaintiff fails to demonstrate error in the ALJ's reasoning.   One does not need to

18   be "utterly incapacitated" in order to be found disabled under the Social Security Act.   *Fair v.*

19   *Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).   Nevertheless, a claimant's claims of "a totally

20   debilitating impairment" may be discredited when the claimant reports participation in

21   everyday activities that indicate capacities transferrable to a work setting, even if those

22   activities suggest some difficulty functioning.   *Molina*, 674 F.3d at 1112-13.   Here, the ALJ

01  reasonably contrasted plaintiff's claims of disability and limitations with contrary evidence in

02  the record.

03      Finally, the ALJ found an absence of support for plaintiff's allegation of disabling panic

04  attacks.  (AR 19.)   The ALJ pointed specifically to the fact that, between November 2009 and

05  September 2011, plaintiff did not once indicate to Ms. Spengler symptoms of panic attacks, and

06  that her counseling "seemed to focus mostly on . . . family relationships."  (*Id.* (citing AR

07  881-92).)   As reflected above, one of plaintiff's counseling sessions did reference panic

08  attacks.  (AR 885.)   However, the failure to acknowledge that reference may be deemed

09  harmless.  *See Molina*, 674 F.3d at 1115 (ALJ's error may be deemed harmless where it is

10  "'inconsequential to the ultimate nondisability determination.'"; court looks to "the record as a

11  whole to determine whether the error alters the outcome of the case.") (cited sources omitted).

12  It remains relevant that plaintiff only once reported panic attack symptoms to Ms. Spengler.

13  That is, the ALJ properly considered the inconsistency between plaintiff's allegation and the

14  evidence in the record.  *See Tonapetyan*, 242 F.3d at 1148.  The ALJ, in sum, provided a

15  number of clear and convincing reasons to find plaintiff less than fully credible.

16                          <u>Lay Witness Evidence</u>

17      Lay witness testimony as to a claimant's symptoms or how an impairment affects ability

18  to work is competent evidence and cannot be disregarded without comment.  *Van Nguyen v.*

19  *Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).   The ALJ can reject the testimony of lay

20  witnesses only upon giving germane reasons.  *Smolen*, 80 F.3d at 1288-89.

21      The ALJ here noted Teresa Reynolds' reports that plaintiff "has no trouble getting along

22  with others, and that she gets along with authority figures 'just fine[,]'" that she "runs errands

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -21

01  and goes to appointments using public transportation[,]" and that plaintiff "can only walk a

02  block or two," and "uses a cane[.]"   (AR 22 (citing AR 296-303).)   The ALJ found the

03  statement generally consistent with the assessed RFC, but gave the portion of the report as to

04  use of a cane little weight given that plaintiff did not report using a cane.   (*Id*.)

05      Contrary to plaintiff's contention, the ALJ did not afford the entire lay statement little

06  weight given the reference to a cane, she explicitly afforded only the portion of the statement

07  referencing a cane little weight.   Plaintiff fails to demonstrate the ALJ erred in reaching that

08  conclusion.   Nor does plaintiff otherwise undermine the ALJ's consideration of the lay

09  statement.   Instead, the ALJ reasonably deemed the lay statement generally consistent with the

10  assessed RFC which included, *inter alia*, significant limitations in plaintiff's ability to stand

11  and walk, and the need for regular breaks in standing and walking.

12                                    RFC Assessment

13      At step four, the ALJ must identify plaintiff's functional limitations or restrictions, and

14  assess his work-related abilities on a function-by-function basis, including a required narrative

15  discussion.   *See* 20 C.F.R. §§ 404.1545, 416.945; SSR 96-8p.   RFC is the most a claimant can

16  do considering his or her limitations or restrictions.   *See* SSR 96-8p. The ALJ must consider

17  the limiting effects of all of plaintiff's impairments, including those that are not severe, in

18  determining his RFC. §§ 404.1545(e), 416.945(e); SSR 96-8p.

19      Plaintiff avers error in the ALJ's failure to consider all of the above-described medical

20  opinion evidence.   However, this mere restating of plaintiff's argument fails to establish error.

21  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

22      Plaintiff also maintains the ALJ erred by failing to address her reaction to stress, as

01   mandated by SSR 85-15.   Again, however, plaintiff fails to demonstrate error by relying on a

02   reiteration of arguments addressed above, including evidence associated with panic attacks and

03   the medical opinions as to her mental impairments.   Moreover, plaintiff fails to acknowledge

04   the inclusion of limitations in the RFC associated with and accounting for her mental

05   impairments, including those relating to very short and simple instructions, simple decisions,

06   occasional and brief superficial contact with others, and the need for a routine and predictable

07   workplace.   (AR 17.)

08        Finally, plaintiff alleges the ALJ failed to take into account her left finger impairment,

09   pointing to Dr. Moore's opinion that this impairment caused her marked difficulty in handling

10   and carrying.   (AR 824.)   The ALJ, however, both adequately addressed Dr. Moore's

11   opinions, and accounted for this impairment by limiting plaintiff to occasional fingering with

12   her left hand.   (AR 17, 20, 82-83.)   Plaintiff, in sum, fails to demonstrate any error in the RFC

13   assessment.

14                                         <u>Step Five</u>

15        Plaintiff avers error at step five based on a deficient RFC and incomplete hypothetical to

16   the VE.   However, because the Court finds no error in the assessment of the medical evidence

17   and assessed RFC and, therefore, the corresponding hypothetical to the VE, this restating of

18   plaintiff's argument fails to establish error at step five.   *Stubbs-Danielson*, 539 F.3d at

19   1175-76.

20        Plaintiff also avers error in relation to the number of jobs identified at step five.   The

21   VE identified two jobs:   (1) surveillance system monitor, with 244 jobs in Washington State

22

01 and 8,359 jobs nationally; and (2) addresser, with 245 jobs[4] regionally and 18,847 jobs

02 nationally.   (AR 82-83.)   He also testified that, given the inclusion of a sit/stand at will

03 requirement in the RFC, the number of addresser jobs would be reduced by fifty percent.   (AR

04 83-85.)   The ALJ concluded that this evidence established the existence of a significant

05 number of jobs in the national economy plaintiff could perform.   (AR 23-24.)

06        Plaintiff asserts that the identification of less than 125 jobs in either occupation is

07 insufficient to meet the Commissioner's step five burden.   In support, she points to cases

08 wherein the Ninth Circuit determined that the identification of a small numbers of jobs did not

09 suffice at step five.   *See Beltran v. Astrue*, 676 F.3d 1203, 1206-07 (9th Cir. 2012) (finding 135

10 regional surveillance monitor jobs qualifies as a 'very rare' number[,]" and that "[a]lthough

11 1,680 jobs might seem a 'significant number' standing alone, distributing these jobs between

12 several regions across the nation shows that it is not 'significant' after all."); *Walker v.*

13 *Matthews*, 546 F.2d 814, 820 (9th Cir. 1976) (rejecting ALJ's reliance on "the existence of a

14 few scattered jobs[]" in two potential occupations).

15        Plaintiff does not accurately reflect the number of regional jobs identified.   The VE

16 testified, and the ALJ found, that only the addressor jobs would be reduced with the inclusion of

17 a sit/stand option.   (AR 23-24, 83-84.)   Considering the fifty percent reduction in addresser

18 jobs, the ALJ relied on a total of some 364 jobs regionally and 17,782 jobs nationally to support

19 her step five decision.

20        The Ninth Circuit has "never set out a bright-line rule for what constitutes a 'significant

21 number' of jobs."   *Beltran*, 676 F.3d at 1206.   It has, however, found "a comparison to other

22

_____

4 The ALJ mistakenly identified this number as 225.   (*See* AR 23 and AR 83.)

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -24

01  cases . . . instructive." (*Id*.)   The Ninth Circuit has further made clear that "[t]he statute in

02  question indicates that the 'significant number of jobs' can be *either* regional jobs (the region

03  where a claimant resides) *or* in several regions of the country (national jobs)." *Beltran*, 676

04  F.3d at 1206 (emphasis in original) (citing 42 U.S.C. §§ 423(d)(2)(A)).   As such, upon finding

05  "*either* of the two numbers 'significant,'" the Court "must uphold the ALJ's decision." *Id.*

06       Here, it is arguable whether, as compared to other cases, a total of some 364 jobs

07  regionally constitutes a significant number. *See*, *e.g.*, *Gray v. Comm'r of the SSA*, No.

08  09-35212, 2010 U.S. App. LEXIS 2609 at *63 (9th Cir. Feb. 8, 2010) (980 jobs in Oregon and

09  59,000 jobs nationally significant); *Thomas*, 278 F.3d at 960 (1,300 jobs in Oregon region and

10  622,000 in the national economy significant); *Meanel v. Apfel*, 172 F.3d 1111, 1114-15 (9th

11  Cir. 1999) (between 1,000 and 1,500 jobs in the local area significant); *Moncada v. Chater*, 60

12  F.3d 521, 524 (9th Cir. 1995) (2,300 jobs in San Diego County and 64,000 jobs nationwide

13  significant); *Barker v. Secretary of Health & Human Servs*., 882 F.2d 1474, 1478-79 (9th Cir.

14  1989) (1,266 jobs in the Los Angeles/Orange County area significant); *Martinez v. Heckler*,

15  807 F.2d 771, 775 (9th Cir. 1987) (amended) (3,750 to 4,250 jobs regionally significant);

16  *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 982 & n.1 (C.D. Cal. 2005) (approximately 1,700 jobs

17  locally and 38,000 jobs nationally significant).   At the same time, as the Commissioner

18  observes, 364 regional jobs almost doubles the 135 jobs at issue in *Beltran*.   *See also Yelovich*

19  *v. Colvin*, No. 11-36071, 2013 U.S. App. LEXIS 13248 at *4 (9th Cir. Jun. 27, 2013) (noting

20  that the Ninth Circuit has "referenced cases finding as few as 500 jobs significant.") (citing

21  *Barker*, 882 F.2d at 1478-79 (citing *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988)

22  (holding as few as 500 jobs significant))).

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -25

01          Also, plaintiff does not raise a challenge to the ALJ's reliance on the number of jobs

02   identified nationally.   (*See* Dkt. 15 at 17-18 and Dkt. 22 at 9.)   That number – 17,782 in total –

03   entails more than ten times the number of jobs deemed not significant in *Beltran*, 676 F.3d at

04   1207 ("1,680 jobs distributed over *several* regions cannot be a 'significant number[]'")

05   (emphasis in original).   Further considering that number, the Court concludes that the ALJ

06   properly supported his step five decision with a significant number of jobs in the national

07   economy plaintiff could perform.   *See*, *e.g.*, *Yepiz v. Colvin*, No. CV 12-05226 AJW, 2013

08   U.S. Dist. LEXIS 46262 at *25-26 (C.D. Cal. Mar. 28, 2013) (800 jobs regionally and 15,000

09   jobs nationally significant); *Albidrez v. Astrue*, 504 F. Supp. 2d 814, 824 (C.D. Cal. 2007)

10   (1,445 job regionally and 17,382 jobs nationally significant).   Plaintiff, therefore, fails to

11   demonstrate reversible error at step five.

12                                          CONCLUSION

13          For the reasons set forth above, this matter should be AFFIRMED.

14          DATED this 22nd day of August, 2013.

15

16                                          _____
                                            Mary Alice Theiler
17                                          Chief United States Magistrate Judge

18

19

20

21

22

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -26